IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD STONE, PAUL CARTER, WILLIAM CARTER, Jr., and TRENT WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROB JEFFREYS, in his official capacity as the Director of the Illinois Department of Corrections,<br><br>Defendant. | No. 21-cv-5616 |

**COMPLAINT**[1]

Plaintiffs Edward Stone, Paul Carter, William Carter Jr., and Trent Warren, individually and on behalf of all others similarly situated, through counsel, bring this action against Defendant Rob Jeffreys in his official capacity as the Director of the Illinois Department of Corrections, and allege as follows:

**Nature of the Case**

1. All of the named Plaintiffs are in the custody of the Illinois Department of Corrections ("IDOC" or "the Department") and have been convicted of sex offenses. Each of the Plaintiffs has completed his court-ordered sentence of incarceration and

---

[1] This case is being filed as "related" to *Murphy v. Raoul,* 16-cv-11471; and *Barnes v. Jeffreys*, 20-cv-2137, and should be assigned to Judge Kendall pursuant to L.R. 40.4(a).

is statutorily entitled to release from prison onto Mandatory Supervised Release ("MSR") for a determinate period of post-incarceration community supervision.[2]

2. In order to be released from the physical custody of an IDOC facility at the completion of their court-imposed sentences of incarceration, Plaintiffs must identify a "host site" that meets the approval of the Department of Corrections at which to reside while on MSR. Specifically, the Illinois Code of Corrections provides that one condition of MSR for any person required to register as a sex offender is that they must "reside only at a Department-approved location." 730 ILCS 5/3-3-7 (b-1)(1).

3. The IDOC has the discretion to decide what constitutes a "Department-approved location" of residence. In making such determinations, the IDOC considers whether the proposed host site complies with residency restrictions imposed by the Illinois Criminal Code, the Illinois Unified Code of Corrections, and with IDOC policies. There is no Illinois statute that makes it illegal for an individual to be homeless while on MSR. Yet, as a matter of policy and practice, the IDOC will not release from custody any person who is homeless and/or who seeks to reside at a homeless shelter while on MSR.

4. There are currently no state-funded halfway houses in Illinois that will accept an indigent person with a sex offense conviction.

---

[2] The length of supervision on MSR is set by statute. *See* 730 ILCS 5/5-8-1. Persons convicted of certain sex offenses are sentenced to an indeterminate term of MSR (*e.g.*, three years to natural life). The Plaintiffs herein were sentenced to a determinate amount of MSR between 1 and 4 years depending on the classification of the underlying conviction. The class certified in *Murphy v. Raoul*, 16-cv-11471, comprises only persons with "three years to natural life" MSR terms.

5. All of the named Plaintiffs remain imprisoned solely because they are too poor to afford housing that the Department of Corrections will approve. Because the Plaintiffs cannot afford housing, they are forced to stay in prison until the expiration of their periods of MSR pursuant to the IDOC's policy.

6. Plaintiffs, individually and on behalf of all others similarly situated, contend that the IDOC's policy and practice of refusing to release individuals who have completed their terms of imprisonment and been approved by the Prisoner Review Board ("PRB") for release on MSR but cannot afford to obtain housing violates the Eighth Amendment and the Equal Protection Clause and seek an injunction prohibiting the Department of Corrections from continuing to enforce this policy.

7. There are at least two potential ways for the IDOC to meet its constitutional obligations: (1) release persons on MSR who cannot afford housing into homelessness; or (2) create transitional housing for persons on MSR who cannot afford housing. In the absence of available transitional housing, the continued imprisonment of persons who cannot afford to secure housing violates the Equal Protection Clause and the Eighth Amendment's prohibition on cruel and unusual punishment.

## Jurisdiction and Venue

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 2201.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as a substantial part of the events giving rise to the claims asserted herein occurred in this district.

3

## The Parties

10. Defendant Rob Jeffreys is sued in his official capacity as Director of the Illinois Department of Corrections. In his capacity as the director of IDOC, he has final authority to set the Department of Corrections' policies with regard to approval of prisoners' host sites.

11. The named Plaintiffs are three individuals who have completed their sentences of incarceration and are entitled to release from prison onto MSR for a determinate period of time, but remain detained in the Department of Corrections beyond the completion of their sentences because they are unable to secure an approved host site.

12. The named Plaintiffs seek to represent a class of all individuals who have been convicted of sex offenses and cannot afford a host site at which to live while on MSR.

## Relevant Legal Background

**The *Murphy* Litigation**

13. The plaintiffs in *Murphy v. Raoul,* 16-cv-11471, challenged the constitutionality of the "host site" requirement as it was being applied to individuals sentenced to an indeterminate term of "three years to life" on MSR. Such individuals face the possibility of being imprisoned for life if they are unable to find and/or pay for housing that meets the requirements imposed by Illinois law and IDOC policy because their MSR time never begins to run until they are released from prison to an approved host site. *See* 730 ILCS 5/3-14-2.5(e).

14. The *Murphy* plaintiffs identified several layers of restrictions that limited where people sentenced to indeterminate MSR can live, which, taken together, made it virtually impossible to find host sites. Among the restrictions that served to prevent the Murphy plaintiffs' release are the following:

- Sections of the Illinois Criminal Code which make it a crime for any individual classified as a "child sex offender" to live within 500 feet of a school, playground, or daycare (720 ILCS 5/11-9.3 (b-5), (b-10));

- Sections of the Illinois Unified Code of Corrections which prohibit persons required to register as sex offenders from living "near" "parks, schools, day care centers, swimming pools, beaches, theaters, or any other places where minor children congregate without advance approval of an agent of the Department of Corrections" (730 ILCS 5/3-3-7(b-1)(12));

- The One-Per-Address Statute which requires individuals on MSR for sex offenses to "refrain from residing at the same address or in the same condominium unit or apartment unit or in the same condominium complex or apartment complex with another person he or she knows or reasonably should know is a convicted sex offender" (730 ILCS 5/3-3-7(a)(7.6));

- Housing restrictions imposed purely as a matter of IDOC policy, including prohibiting living in a host site where children visit or reside (including the parolee's own children), where there are computers or Wi-Fi access, and/or where there is no land-line telephone;

- The unavailability of half-way houses, transitional housing, homeless shelters or other free or low-cost housing for indigent parolees; and

- The IDOC's interpretation of the One-Per-Address Statute as prohibiting a sex offender parolee from living in a building adjacent to a building where another registrant lives and/or from living in the same trailer park as another registrant.

15. On April 6, 2018, this Court certified *Murphy* as a class action on behalf of "all individuals sentenced to serve three-years-to-life on MSR currently detained in the IDOC who have been approved for release on MSR by the PRB but have been

denied release from IDOC custody because of their inability to obtain an approved host site." *Murphy v. Raoul*, 16-cv-11471, ECF 63.

16. On March 31, 2019, this Court granted the *Murphy* plaintiffs' motion for summary judgement on their claim that the IDOC's application of the host-site requirement to members of the class violates the Equal Protection Clause and the Eighth Amendment because the continued imprisonment of individuals who are unable to afford housing "punish[es] the plaintiffs for their indigency and homelessness, matters totally beyond their control." *Murphy v. Raoul*, 16-cv-11471, ECF 132; *Murphy v. Raoul*, 380 F. Supp. 3d 731, 756 (N.D. Ill. 2019).

17. On January 15, 2020, this Court entered a permanent injunction requiring the Illinois Department of Corrections to put forth a compliance plan "setting forth the specific steps [the Defendants] will take to ensure that by no later than January 2, 2021, no member of the class will remain imprisoned due to an inability to comply with the host site requirement." *Murphy v. Raoul*, 16-cv-11471, ECF 156. The compliance deadline has been extended to November 1, 2021. *Id.* at ECF 210.

18. As of this filing, the *Murphy* class comprises 165 individuals who remain in prison beyond the completion of their court-ordered sentence of imprisonment due to an inability to meet the host site requirement.

**The *Barnes* Litigation**

19. The plaintiffs in *Barnes v. Jeffreys*, 20-cv-2137, challenged the constitutionality of the "One-Per-Address Statute," 730 ILCS 5/3-3-7(a)(7.6), a section of the Illinois Code of Corrections which requires individuals on MSR for sex

6

offenses to "refrain from residing at the same address ... with another person he or she knows or reasonably should know is a convicted sex offender."

20. On July 1, 2020, this Court certified *Barnes* as a class action on behalf of "[a]ll individuals who have been convicted of sex offenses and completed their court-imposed sentence of incarceration who cannot find housing that complies with [the One-Per-Address Statute] at which to reside while on Mandatory Supervised Release." *Barnes v. Jeffreys*, 21-cv-2037, ECF 31. Pursuant to this class definition, the certified class in *Barnes* comprises persons with three-to-life MSR terms and determinate MSR terms.

21. On March 26, 2021, this Court granted the *Barnes* plaintiffs' motion for summary judgement on their claim that the One-Per-Address Statute violates the Equal Protection Clause and the Eighth Amendment. The Court found that the One-Per-Address Statute put off limits "affordable housing units and residential rehabilitative programs willing and capable of accepting sex offenders" and found that the plaintiffs' "failure to procure an acceptable host site is involuntary conduct inseparable from their indigent or homeless status." *Barnes v. Jeffreys*, 20-cv-2137, ECF 95 at 17.

22. As of this filing, the *Barnes* class comprises a total of approximately 650 individuals—approximately 500 of whom have determinate MSR periods and 150 of whom have three-to-life MSR terms—who remain in prison beyond the completion of their court-ordered sentence of imprisonment due to an inability to meet the host site requirement.

7

**The Lack of Housing for Indigent Persons with Sex Offense Convictions**

23. As a direct result of the *Barnes* and *Murphy* decisions, several housing options have become available for persons with sex offense convictions that were previously off limits. Most members of the *Barnes* class, however, are ineligible for these housing options.

24. First, in connection with its efforts to comply with the permanent injunction in *Murphy*, the Department of Corrections has created a temporary housing program for indigent members of the *Murphy* class called the Intensive Community Reintegration Program ("ICRP"). This program is available at no cost for a period of 90 to 180 days only to qualifying members of the *Murphy* class (*i.e.*, persons with three-to-life MSR sentences who cannot afford to obtain compliant housing).

25. As a result of injunctive relief granted in *Barnes*, Wayside Cross Ministries, a not-for-profit rehabilitation program in Aurora has offered temporary housing to 24 members of the *Murphy* and *Barnes* classes in the past 18 months. There are, however, several limitations as to who is eligible for release to Wayside Cross: (1) due to space and financial limitations, Wayside Cross can only accept a maximum of 12 persons on MSR at a time (and currently has no additional openings); (2) program participants must be Christian and interested in a "Bible-based" program; and (3) no one who has been convicted of an offense involving a person under 18 years of age is eligible to seek release to Wayside Cross because it is situated within 500 feet of a playground.

26. As a result of injunctive relief granted in *Barnes*, there are also several privately operated transitional housing providers located in Chicago that accept persons with sex offense convictions, including New Beginnings Recovery Homes Inc., Future Foundation, Amer Living LLC, and Jordan's Dream. These providers have limited space and all require up-front payment (typically between $1,000 and $2,000) to secure a placement, plus monthly payment of $500 to $650 to remain in the program.

27. Notwithstanding the decisions in *Murphy* and *Barnes*, there are still no state-funded halfway houses in the State of Illinois that will accept a person with a sex offense conviction.

28. The IDOC still maintains a policy of refusing to release a person with a sex offense conviction who is homeless and/or seeks to use a homeless shelter as his host site address.

29. Accordingly, it is impossible for an indigent individual who has been convicted of a sex offense involving a person under 18 who has a determinate MSR sentence (as opposed to three-to-life) to meet the host site requirement. Thus, all such persons will be forced to remain in prison for the entirety of their MSR sentences.

**Facts Relevant to the Named Plaintiffs**

**Edward Stone**

30. Plaintiff Edward Stone (IDOC No. R42443) is currently imprisoned at Shawnee Correctional Center.

31. He was convicted in 2003 of criminal sexual assault and sentenced to serve 24 years in the Illinois Department of Corrections to be followed by four years of Mandatory Supervised Release. With statutory sentence credits, Mr. Stone completed his sentence of incarceration and was deemed eligible to be released onto MSR by the Prisoner Review Board ("PRB") on December 30, 2020.

32. Mr. Stone remains imprisoned because he is unable to meet the host site requirement. Due to his inability to secure housing, he will be forced to remain in prison until he "maxes out" his MSR term on July 18, 2023.

33. Mr. Stone is indigent. He has less than $400 to his name. All money and property that he once possessed prior to his incarceration is gone. His mother is currently experiencing significant health problems, including Alzheimer's disease and dementia, and is not able to offer Mr. Stone any financial help or housing. Mr. Stone's father is deceased. Mr. Stone is not married and has no other family members who are willing or able to assist him financially or by taking him into their homes.

34. Mr. Stone does not meet the criteria to be considered for release to Wayside Cross Ministries because he has been convicted of an offense involving a minor and is ineligible for the ICRP because he has a determinate amount of MSR. There are no shelters or halfway houses in the entire state that IDOC will approve as a host site for someone in Mr. Stone's situation.

35. Mr. Stone does not want to remain in prison during his MSR term and seeks release to the community to complete his period of supervision, even if he is

homeless upon release. Mr. Stone is willing and able to work and would seek to obtain employment in order to secure housing if he is released into homelessness.

36. Mr. Stone feels great urgency to secure his release from prison because the current conditions at Shawnee Correctional Center are dangerous and extremely restrictive due to ongoing outbreaks of Covid-19 infections in the facility. Prisoners are confined to their cells for 22.5 hours a day and are only allowed one hour a day in the day room.

**Paul Carter**

37. Paul Carter (IDOC No. A83673) is currently imprisoned in Taylorville Correctional Center.

38. He was convicted in 1981 of rape and armed robbery and sentenced to serve 40 years in the Illinois Department of Corrections to be followed by three years of Mandatory Supervised Release. With statutory sentence credits, Mr. Carter completed his sentence of incarceration and was deemed eligible to be released onto MSR by the PRB on April 9, 2021.

39. Mr. Carter remains imprisoned because he is unable to meet the host site requirement. Due to his inability to secure housing, he will be forced to remain in prison until he "maxes out" his MSR term on October 10, 2022.

40. IDOC will not release Mr. Carter to a shelter or halfway house. Mr. Carter does not meet the criteria to be considered for release to Wayside Cross Ministries because he is Jewish and is ineligible for the ICRP because he has a determinate

amount of MSR. There are no shelters or halfway houses in the entire state that IDOC will approve as a host site for someone in Mr. Carter's situation.

41. Mr. Carter is indigent and homeless. He has a total of $200 to his name. He does not have any family on the outside who can help him secure housing. His parents are deceased, he was never married, and has no children. Mr. Carter occasionally receives a gift of $50 on his books from a friend on the outside. Otherwise, his only funds are approximately $16 a month from working as a janitor at Taylorville.

42. Mr. Carter has requested release to a shelter or halfway house so he can serve his MSR time in the community. In a June 3, 2021, counseling summary, Mr. Carter was told by the Department of Corrections that "sex offenders cannot parole to shelters or halfway houses."

**William Carter Jr.**

43. William Carter Jr. (IDOC No. S00732) is currently imprisoned at Taylorville Correctional Center.

44. He was convicted in 2004 of predatory criminal sexual assault and sentenced to serve 20 years in the Illinois Department of Corrections to be followed by three years of Mandatory Supervised Release. With statutory sentence credits, Mr. Carter completed his sentence of incarceration and was deemed eligible to be released onto MSR by the PRB on August 3, 2020.

45. Mr. Carter remains imprisoned because he is unable to meet the host site requirement. Due to his inability to secure housing, he will be forced to remain in

prison until he "maxes out" his MSR term, which according to IDOC records, will not happen until August 3, 2023.

46. Mr. Carter is indigent. His parents are deceased and he does not have any outside support from family or friends.

47. Mr. Carter does not meet the criteria to be considered for release to Wayside Cross Ministries because he has been convicted of an offense involving a minor and is ineligible for the ICRP because he has a determinate amount of MSR. There are no shelters or halfway houses in the entire state that IDOC will approve as a host site for someone in Mr. Carter's situation.

48. Mr. Carter believes that he will be eligible for social security when he is released from prison and will be able to secure housing once his social security benefits begin. But he will never become eligible to obtain social security benefits as long as he stays in prison. Thus, he needs to be released to a homeless shelter or halfway house to regain the ability to obtain housing and support himself.

**Trent Warren**

49. Plaintiff Trent Warren (IDOC No. Y20422) is currently imprisoned at Pinckneyville Correctional Center.

50. He was convicted in 2016 of attempted aggravated criminal sexual assault and sentenced to serve 10 years at 50 percent in the Illinois Department of Corrections to be followed by three years of MSR. Mr. Warren's MSR sentence was subsequently lowered to two years. With statutory sentence credits, Mr. Warren

completed his sentence of incarceration and was deemed eligible to be released onto MSR by the PRB on September 7, 2021.

51. Mr. Warren remains imprisoned because he is unable to meet the host site requirement. Due to his inability to secure housing, he will be forced to remain in prison until he "maxes out" his MSR term on September 7, 2022.

52. Mr. Warren is indigent. He has less than $30 to his name. All money and property that he once possessed prior to his incarceration is gone. He does not have any family on the outside who can help him secure housing, assist him financially, or take him into their home.

53. Mr. Warren does not meet the criteria to be considered for release to Wayside Cross Ministries because he is not religious, and he is ineligible for the ICRP because he has a determinate amount of MSR. There are no shelters or halfway houses in the entire state that IDOC will approve as a host site for someone in Mr. Warren's situation.

54. Mr. Warren does not want to remain in prison during his MSR term and seeks release to the community to complete his period of supervision, even if he is homeless upon release. Mr. Warren is willing and able to work and would seek to obtain employment in order to secure housing if he is released into homelessness. If he were released into homelessness, Mr. Warren would be able to go to Danville, Illinois where his grandfather lives in a senior-living center. He could not reside with his grandfather, but his grandfather also owns property on which there is a

trailer with all utilities that is currently unlivable but which could be cleaned up so that Mr. Warren could live there

55. Mr. Warren feels great urgency to secure his release from prison at Pinckneyville, where prisoners are presently confined to their cells for 23 hours a day and are only allowed one hour a day in the day room.

## Class Allegations

56. Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of this complaint as a class action for purposes of equitable relief on behalf of a class defined as follows.

- All individuals currently or in the future detained in the Illinois Department of Corrections who have completed their sentences of incarceration and are entitled to release from prison onto MSR for a determinate period of time, but remain detained imprisoned because they are unable to secure an approved host site at which to live while on MSR.

57. The class seeks a declaration that the IDOC policies that operate to keep them imprisoned on the basis of their indigency violate the Eighth Amendment and the Equal Protection Clause and an injunction prohibiting Defendant from continuing to enforce the policies.

58. The proposed class is numerous. According to data obtained in the *Barnes* and *Murphy* class actions, there are currently approximately 500 determinately sentenced persons who are imprisoned beyond the completion of their sentences of incarceration due to their inability to secure housing meeting Illinois statutory requirements and IDOC policy. On information and belief, indigency and lack of financial resources is a principal cause of the continued incarceration of many, if not

most, of these individuals. In addition, membership in the class is growing as additional people complete their sentences of incarceration but are not released from prison due to their inability to obtain approved housing.

59. There are questions of law and fact common to all class members, including but not limited to the following:

- What are the IDOC's rationales for refusing to release persons who are indigent and/or homeless upon their being approved by the PRB for release on MSR;

- Whether there is any compelling interest served by the IDOC's policy of refusing to release persons who are indigent and/or homeless onto MSR;

- Whether the policy and practice of refusing to release persons who are indigent and/or homeless onto MSR violates the Eighth Amendment and Equal Protection Clause as applied to the members of the class.

60. All individuals falling within the class definition are subject to the same IDOC policy regarding the host site requirement. Given the commonality of the questions pertinent to all class members, a single judgment would provide relief to each member of the class.

61. Defendant has acted and continues to act in a manner adverse to the rights of the proposed class, making final declaratory relief appropriate with respect to the class as a whole.

62. The named Plaintiffs will fairly and adequately represent the interests of the class. They are currently subjected to the challenged policy and are committed to seeing this litigation through on behalf of all persons who are currently or will in the future be subjected to the same policy. The named Plaintiffs' claims are typical of the claims of all members of the proposed class.

63. Plaintiffs' counsel has extensive experience and has devoted substantial professional and financial resources to representing individuals in cases involving the same type of claim raised here—namely, the *Murphy* and *Barnes* class actions. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

## COUNT I
## 42 U.S.C. §1983 – Eighth Amendment

64. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

65. In *Murphy v. Raoul*, 380 F. Supp. 3d 731, 738 (N.D. Ill. 2019), this Court concluded that it violates the Equal Protection Clause and the Eighth Amendment to incarcerate individuals beyond the completion of their prison sentences solely because they cannot meet the host-site requirement, holding as follows:

> At the very heart of the liberty secured by the separation of powers is freedom from indefinite imprisonment by executive decree. The Attorney General and Director's current application of the host site requirement results in the continued deprivation of the plaintiffs' fundamental rights and therefore contravenes the Eighth and Fourteenth Amendments to the Constitution of the United States.

66. Plaintiffs and the members of the proposed class they seek to represent are identically situated to the members of the *Murphy* class in every respect except the length of additional time they will spend in prison as a result of their inability to meet the host site requirement—*i.e.*, the members of the *Murphy* class are indefinitely imprisoned, while the members of the proposed class are imprisoned for a determinate period of time between 1 and 4 years.

67. As in *Murphy*, the continued imprisonment of the Plaintiffs and the members of the proposed class is not a consequence of their underlying offense but of their indigent or homeless status, conditions wholly beyond their control.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

    A. Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2) and appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

    B. Enter judgment declaring that the IDOC's policy and practice of refusing to release persons from custody solely because they are unable to meet the host-site requirement violates the Eighth Amendment of the U.S. Constitution;

    C. Enter a permanent injunction prohibiting Defendant from continuing to enforce the policy;

    D. Enter judgment for reasonable attorneys' fees and costs incurred in bringing this action; and

    E. Grant Plaintiffs any other relief as law and justice demand.

## COUNT II
## 42 U.S.C. §1983 – Fourteenth Amendment Equal Protection

68. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

69. The IDOC's policy and practice of refusing to release from custody persons who cannot meet the "host site" requirement after they have completed their sentences of incarceration and have been approved for release on MSR violates the Equal Protection Clause because it creates an illegal classification based on wealth which deprives Plaintiffs of their liberty as a result of their inability to pay.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2) and appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

B. Enter judgment declaring that the IDOC's policy and practice of refusing to release persons from custody solely because they are unable to meet the host-site requirement violates the Equal Protection Clause of the Fourteenth Amendment;

C. Enter a permanent injunction prohibiting Defendant from continuing to enforce the policy;

D. Enter judgment for reasonable attorneys' fees and costs incurred in bringing this action; and

E. Grant Plaintiffs any other relief as law and justice demand.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com


Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net