**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD STONE, *et al*., individually and on behalf of all others similarly situated, | ) | |
| *Plaintiffs*, | ) | No. 21 C 5616 |
| v. | ) | Judge Virginia M. Kendall |
| ROB JEFFREYS, | ) | |
| *Defendant*. | ) | |

**MEMORADUM OPINION AND ORDER**

Plaintiffs bring this action on behalf of a class of indigent sex-offenders that remain imprisoned beyond the completion of their sentence of incarceration because they cannot obtain approved housing. The proposed class each have had a determinate amount of time—generally 1-3 years—of Mandatory Supervised Release ("MSR") imposed as part of their sentence. Plaintiffs allege violations of the Eighth Amendment and the Fourteenth Amendment and seek (1) a declaration that the Illinois Department of Corrections ("IDOC") policy of refusing to release individuals from custody for failure to meet the host site requirement is unconstitutional and (2) an injunction prohibiting enforcement of that policy. Before the Court is Defendant's Motion to Dismiss (Dkt. 16). For the reasons discussed herein, that Motion is denied.

## BACKGROUND

### I. Related Litigation

The plaintiffs in *Murphy v. Raoul et al*., No. 16-cv-11471, first filed suit in 2016 on behalf of a class of convicted sex offenders sentenced to an indeterminate term of Mandatory Supervised Release ("MSR"). Because their MSR term did not begin until released to an approved host site, the *Murphy* class faced the possibility of a life sentence if unable to find approved housing. The plaintiffs brought Eighth Amendment and Fourteenth Amendment claims. The Court granted the plaintiffs' motion for summary judgment that the IDOC's application of the host site requirement violates the Equal Protection Clause and the Eighth Amendment because the continued imprisonment of individuals who are unable to afford housing "punish[es] the plaintiffs for their indigency and homelessness, matters totally beyond their control." *Murphy v. Raoul*, 380 F. Supp. 3d 731, 756 (N.D. Ill. 2019). With respect to the Fourteenth Amendment equal protection claim, the Court found that the way the defendants implemented the statutory scheme "creates an illegal classification based on wealth, which indefinitely deprives the class members of their liberty as a result of their incapacity to pay." *Id.* at 759. The Court observed that "[t]he IDOC is free to develop whatever additional practices it wants to avoid the inadvertent wealth classification it has created while still satisfying the goal of public safety. The Court encourages the defendants to utilize their discretion to execute the Legislature's purpose in a constitutional manner that does not unfairly impact the indigent, homeless sex offenders who cannot by themselves obtain a host site upon the completion of their prison terms." *Id.* In considering the Eighth Amendment claim, the Court found that "[a] revocation of supervised release (or here, a decision not to release) for the failure to comply with a condition of release is analogous to a criminal prosecution of a status offense . . . defendants' application of the host site requirement, while perhaps contributing to public safety,

frustrates the rehabilitation process and is constitutionally void." *Id.* at 765. In so finding, the Court went on to say that its decision related to an "as-applied challenge and it in no way purports to tell the defendants how to best administer mandatory supervised release for sex offenders." *Id.* at 765-766.

The Court entered its permanent injunction order on January 15, 2020, ordering that no *Murphy* class member remain incarcerated in IDOC custody due to an ability to locate a host site as of March 20, 2021. *Murphy*, No. 16-cv-11471, Dkt. 156. The Court most recently extended the deadline for compliance in *Murphy* to May 31, 2022. *Id.*, Dkt. 247. As of March 31, 2022, approximately 116 members of the *Murphy* class remained in IDOC custody more than 30 days past the date of their MSR date. *Id.*, Dkt. 251.

Another related case, *Barnes v. Jeffreys*, No. 20-cv-2137, challenged the constitutionality of the One-Per-Address Statute on Eighth Amendment and Fourteenth Amendment grounds. In that case, a class of convicted sex offenders that completed their court-ordered sentences of incarceration and were entitled to release on MSR in a community setting nevertheless remained in prison because they were unable to secure an approved host site. This class includes offenders with both determinate and indeterminate sentences of MSR. *Barnes* challenged the constitutionality of a state statute that a convicted sex offender on MSR could not live in the same building as another registered sex offender. The Court granted summary judgment, finding that the One-Per-Address statute constituted violations of the Eighth Amendment as applied to the class and the Fourteenth Amendment equal protection clause. *See Barnes v. Jeffreys*, 529 F. Supp. 3d 784 (N.D. Ill. 2021). As of the filing of the instant Complaint, the *Barnes* class consists of 650 individuals that remain in prison beyond the completion of their court-ordered sentence of

incarceration due to an inability to meet the host site requirement. (Dkt. 1 ¶22). Approximately 500 of those 650 class members have determinate MSR terms. (*Id.*).

## II. Factual Background

The following allegations taken from the Complaint are treated as true for purposes of deciding Defendant's motion to dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Plaintiffs propose a class of "[a]ll individuals currently or in the future detained in the Illinois Department of Corrections who have completed their sentences of incarceration and are entitled to release from prison onto MSR for a determinate period of time but remain detained imprisoned because they are unable to secure an approved host site at which to live while on MSR." (Dkt. 1 (Complaint) ¶56). Additional housing options to serve as host sites—offered because of the *Murphy* and *Barnes* litigation—are not available to most members of the *Barnes* class. (¶23). For example, the Intensive Community Reintegration Program ("ICRP") is available only to *Murphy* class members, who have indeterminate MSR sentences. (¶24). Another possible host site, Wayside Cross, only offers twelve slots and requires that any individuals residing there be Christian and not have a sex offense involving an underage individual. (¶25). There are no state-funded halfway houses in the State of Illinois that will accept a person convicted of a sex offense, and privately owned transitional housing requires upfront payment. (¶¶26-27). Further, IDOC has a policy that it will not release otherwise MSR-eligible individuals into homelessness. (¶28). Plaintiffs remain imprisoned because they are too poor to afford IDOC-approved housing. (¶5).

*Named Plaintiffs*

The four named Plaintiffs are in the custody of the Illinois Department of Corrections, and each has been convicted of sex offenses. (¶1). Each is eligible to be released from incarceration

to complete a determinate amount of time on Mandatory Supervised Release. (¶¶31, 38, 44, 50). There is no shelter or halfway house in the State of Illinois that IDOC will approve as a host site for someone in the position of the named plaintiffs. (¶¶34, 40, 47, 53).

Edward Stone is a prisoner at Shawnee Correctional Center. (¶30). Stone was convicted of criminal sexual assault in 2003 and sentenced to 24 years in IDOC custody followed by 4 years of MSR. (¶31). Stone completed his incarceration and was deemed eligible to be released onto MSR by the PRB on December 30, 2020. (¶31). Stone has less than $400 to his name and has no family members willing or able to assist him either financially or by taking him into their homes. (¶33). Stone is ineligible for placement at Wayside and ICRP. (¶34).

Paul Carter is a prisoner at Taylorville Correctional Center. (¶37). Carter was convicted of rape and armed robbery in 1981 and was sentenced to 40 years in IDOC custody to be followed by 3 years MSR. (¶38). Carter completed his sentence of incarceration and was deemed eligible to be released onto MSR by the PRB on April 9, 2021. (*Id.*). Carter is homeless, has $200 to his name, and has no family to help him secure a host site. (¶41). Carter is ineligible for placement at Wayside and ICRP. (¶40).

William Carter Jr. is a prisoner at Taylorville Correctional Center (¶43). Carter was convicted of predatory sexual assault in 2004 and sentenced to serve 20 years of incarceration followed by 3 years MSR. (¶44). Carter completed his sentence of incarceration and was deemed eligible to be released onto MSR by the PRB on August 3, 2020. (*Id.*). Carter is indigent and has no outside support from family or friends and does not meet the criteria to be considered for release to Wayside nor ICRP. (¶¶46-47).

Trent Warren is a prisoner at Pinckney Correctional Center. (¶49). Warren was convicted of attempted aggravated criminal sexual assault in 2016 and was sentenced to serve 10 years at

fifty percent in IDOC custody, followed by 3 years of MSR. (¶50). Warren's MSR term was subsequently lowered to 2 years, and he was deemed eligible to be released onto MSR on September 7, 2021. (¶50). Warren has less than $30 to his name and has no family to help him secure housing or provide financial assistance. (¶52).

## LEGAL STANDARDS

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendants argue that the Complaint should be dismissed because the claims should have been brought as habeas petitions, and that the Complaint also fails on its merits.

### I. *Heck* Doctrine and § 1983

Both "42 U.S.C. § 1983 and the federal habeas corpus statue, 28 U.S.C. § 2254 provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials, but they differ in their scope and operation." *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). Under *Heck*, a plaintiff cannot bring a § 1983 claim if a judgment in his favor would "necessarily imply

the invalidity of his conviction or sentence." *Id*. at 486-487. In *Edwards v. Balisok*, *Heck* was extended to the decisions of prison disciplinary tribunals. 520 U.S. 641 (1997).

As an initial matter, Defendant does not argue that the claim should be barred because a judgment would "necessarily imply the invalidity" of the Plaintiffs' convictions or sentences. *See* Dkt. 29 at 3; *see also Murphy*, 16-cv-11471 at Dkt. 31 ("Plaintiffs' claims do not fall in line with the *Heck* cases, however, because here the claims do not '*necessarily* imply the validity' of Plaintiffs' sentences but instead challenge the constitutionality of the procedures applied by Defendants in determining MSR.") (emphasis in original). Defendant argues that Plaintiffs seek "a quantum change in the level of custody" that must be sought in a habeas petition.

Defendant's argument that Plaintiffs' claims should have been brought as habeas petitions under § 2254 is nothing new. A similar argument was raised and rejected twice in *Murphy* and again on summary judgment in *Barnes.* First, the Court denied defendant's motion to dismiss in *Murphy*, reasoning that "Plaintiffs do not claim 'entitlement' to parole or MSR. Plaintiffs claim entitlement to a constitutional process in determining whether they will be released on MSR, not to release on MSR ... Plaintiffs do not claim a right to release but instead that officials are using unconstitutional rules." *Murphy*, No. 16-cv-11471, Dkt. 31 at 13. On summary judgment the defendant again raised this argument, and the Court affirmed its earlier decision that the case was about "fair procedure and not release from incarceration, although as a remedial matter they might end up there." *Murphy*, 380 F. Supp. 3d at 750 ("Here, the plaintiffs are neither challenging their sex-crimes convictions nor their sentences, which include their MSR terms of three years to life. Put a little differently, the plaintiffs do not seek to invalidate the fact or duration of their confinement. Rather, they seek to change the processes used in determining the penultimate condition of their confinement—location.")

In *Barnes*, the Court again rejected the argument that challenges to the application of host site policies and procedures should be brought under § 2254:

> Plaintiffs challenge neither their convictions nor their sentences, including their MSR terms. Instead, Plaintiffs challenge the procedures used in host site review. (Dkt. 24-1 ¶¶ 2, 4, 7, 95–100); *see Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) ("[A] challenge to the rules that affect placement in community confinement [shall be treated] the same way as rules that affect placement in parole systems."). The One-Per-Address Statute "in no way affects the duration, much less the fact, of confinement" and, absent the statutory limitation, "supervised release will still be in place, and it will last just as long." *Bunn v. Conley*, 309 F.3d 1002, 1007–08 (7th Cir. 2002). Even were Defendant's framing of the issue as prison versus supervised release correct, Plaintiffs' claims are nonetheless appropriate under § 1983 as they do not request early release. *Moran v. Sondalle*, 218 F.3d 647, 652 (7th Cir. 2000) (explaining that § 1983 is the appropriate vehicle for prisoners who do not demand early release but contest the procedures used to make those determinations). Plaintiffs' claims are proper under § 1983.

*Barnes*, 529 F. Supp. 3d at 794 (N.D. Ill. 2021). Still, Defendant continues to rely on the Seventh Circuit's decision in *Graham v. Broglin* to argue that Plaintiffs are seeking a "quantum change" in custody inappropriate for a § 1983 petition. 922 F.2d 379 (7th Cir. 1991). The Court considered and rejected this argument in *Murphy* and sees no reason to find differently here. *See Murphy*, 16-cv-11471, Dkt. 31 at 13 ("Plaintiffs do not seek 'entitlement' to parole or MSR. Plaintiffs claim entitlement to a constitutional process in determining whether they will be released on MSR, not to release on MSR . . . Plaintiffs do not claim a right to release but instead that officials are using unconstitutional rules. Therefore, *Graham* [] support[s] Plaintiffs' claims as properly brought under § 1983.")

Defendant's argument for a different outcome is premised in part on a distinction between *Murphy* and the instant case—that *Murphy* sought entitlement to a constitutional process, and the current Plaintiffs seek a "right to release" on MSR. (Dkt. 17 at 9-10). The Plaintiffs here allege

they are similarly situated to the *Murphy* class except that they have determinate, and not indeterminate, MSR sentences. (Dkt. 22 at 9-10, 15-16). As a result of this difference, Plaintiffs cannot qualify for ICRP and instead must simply remain in prison for the duration of their MSR if their indigency leaves them unable to secure an approved host site. (*Id.*, *see also* Dkt. 1 ¶¶24, 29). The relief sought in the two cases is similar, and the Complaint does not seek relief in the form of "immediate release" of the named plaintiffs and/or prospective class members that are eligible for MSR. Plaintiffs' pending motion for a preliminary injunction also does not seek an order to compel the immediate release of the class members. As in *Murphy*, the plaintiffs here do not directly seek release but are "asking for a constitutional application of the relevant law and policy to their situations." *Murphy*, 380 F. Supp. 3d at 752.

The Complaint is properly pled under § 1983 and is not barred by the *Heck* doctrine.

## II. Eighth Amendment

Defendants next argue that, even if not barred by *Heck*, Plaintiffs fail to state a claim under the Eighth Amendment. Like in *Murphy*, Plaintiffs allege that it is a violation of the Eighth Amendment to continue to imprison individuals after the end of their sentence of incarceration solely because they cannot meet the host site requirement. (Dkt. 1 ¶¶65-66). Plaintiffs allege that their continued imprisonment past their MSR eligibility date is not a consequence of the underlying offense, but of their status as indigent and homeless—circumstances beyond their control. (*Id.* ¶67). Defendant argues that this claim should be dismissed because the Plaintiffs are not entitled to "early release," and the Plaintiffs have not been subjected to new criminal penalties. (Dkt 29 at 10-11).

The Eighth Amendment "circumscribes the criminal process in three ways: First, it limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes

punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (internal citations omitted).

As the Court observed in *Murphy*, "for someone who is homeless, it is virtually impossible to comply with the IDOC's application of the host site requirement." 380 F. Supp. 3d. at 764. Plaintiffs in this case allege that is still the case for homeless sex offenders with a determinate MSR term. (Dkt. 1 ¶¶ 3-6, 27-29). Plaintiffs have alleged that they are indigent, have no family or friends to provide housing or financial assistance, are not eligible for the housing sites available to some indigent sex offenders as a result of the *Murphy* permanent injunction, and there are otherwise no shelters or halfway houses in the State of Illinois that would accept them as residents to serve their MSR term. (*Id.* ¶¶34, 40, 47, 53). Therefore, the Plaintiffs' allegations here, as in *Murphy*, are that the inability to procure a host site is "not voluntary conduct merely related to, or derivative of, the status of homelessness, but [is] entirely involuntary conduct that [is] inseparable from [their] status of homelessness." *Murphy*, 380 F. Supp. 3d at 764 (N.D. Ill. 2019) (internal citation omitted). Therefore, the Plaintiffs have stated a viable claim that the current policy as applied to the class violates the Eighth Amendment.[1]

Defendant's argument would require a finding that an indeterminate imprisonment beyond the end of a sentence threatens the constitution (as the Court found in *Murphy*), but a determinate time of additional imprisonment—that could constitute years of continued imprisonment beyond the sentence of incarceration—does not. (*See* Dkt. 17 at 10). This is inconsistent with *Barnes*, and the distinction does not warrant dismissal at this stage. An indeterminate term of MSR is not a prerequisite to find that some additional punishment (here, continued imprisonment beyond the

[1] Defendant's argument that Plaintiffs' claim fails because they are not subject to a "new" prosecution was considered in *Murphy* and rejected. 380 F. Supp. 3d at 764. Nothing here warrants a different result.

end of a sentence of incarceration) could establish a constitutional harm. *See, e.g., Hurd v. Fredenburgh*, 984 F.3d 1075, 1085 (2d Cir. 2021) ("[U]nauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis.") (citations omitted). *See also, Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017) (plaintiff who was on supervised release could succeed on his Eighth Amendment claim if he proved he was subjected to "punishment without penological justification"); *Johnson v. Loftus*, 2008 WL 4542952 at *7 (N.D. Ill. Apr. 1, 2008) (a person "suffers irreparable harm each day that he is imprisoned in violation of the United States Constitution, and there is no adequate remedy for such harm.") (citation omitted).

Plaintiff's Eighth Amendment claim survives.

## III. Fourteenth Amendment

Defendants also argue that Plaintiffs fail to state an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). Plaintiffs allege that a policy of refusing to release individuals that cannot meet the host site requirement after completing a sentence of incarceration violates the Equal Protection Clause because it creates illegal classifications based on wealth and deprives the Plaintiffs of their liberty because of their inability to pay. (Dkt. 1 ¶69).

The parties dispute the correct level of scrutiny to apply to this claim. Defendant proposes the Court should apply *Turner v. Safley*, which holds that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In the alternative, Defendant argues for rational basis review. In contrast, Plaintiffs argue that this claim requires an

application of strict scrutiny. In *Murphy*, the Court concluded that "[t]he whole point of the varying forms of custody at issue in these cases—incarceration, parole, probation, supervised release—is to restrict the liberty of individuals convicted of crimes. Custody determinations, to the extent they fall within the ambit of the Fourteenth Amendment, come under the scope of *Turner* because they lie at the core of running a correctional system." *Murphy*, 380 F. Supp. 3d at 753 (conducting analysis of equal protection claim and concluding *Turner* was the correct level of scrutiny to apply).

The Court thus considers Plaintiffs' Fourteenth Amendment equal protection claim under the deferential *Turner* standard. There are four factors to consider if the policy decision (here, to continue to incarcerate indigent sex offenders for the entirety of their determinate MSR term if they cannot obtain host site approval due to indigency) is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *see also Siddiqi v. Leak*, 880 F.2d 904 (7th Cir. 1989) (applying *Turner* to prison policy decisions). Those four factors are: (1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open "alternative means of exercising" the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns. *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) citing *Turner*, 482 U.S. at 89-91.

The first factor can "act as a threshold factor regardless which way it cuts." *Riker v. Lemmon,* 798 F.3d 546, 553 (7th Cir. 2015) (internal quotation omitted). The Court addressed this factor in *Barnes*: "the relevant question is whether indigent and homeless sex offenders remain incarcerated while non-indigent and non-homeless sex offenders are not solely because the former cannot afford housing outside prison while the latter can." *Barnes*, 529 F. Supp. 3d at 797. This

is precisely what the Plaintiffs allege in this case. (Dkt. 1 ¶¶2-6, 69). Defendant argues that IDOC has a legitimate interest in "protection of the public" that is rationally related to the policy of continued incarceration for sex offenders otherwise eligible for MSR that, due to their indigency, cannot secure an approved host site. (Dkt. 17 at 16-17). Defendants argue that requiring a stable host site is consistent with the purpose of preventing recidivism. (*Id.*) Defendants also submitted a declaration from Parole Chief Jason Garnett and attach to their motion to dismiss several articles from other prison systems. (Dkts. 17-1 – 17-5, Dkt. 20-1).

As Justice Sotomayor recently wrote respecting the denial of certiorari in *Ortiz v. Breslin*, "no one doubts that New York's goal of preventing sexual violence towards children is legitimate and compelling, but New York nonetheless must advance that objective through rational means. Courts, law enforcement agencies, and scholars all have acknowledged that residency restrictions do not reduce recidivism and may actually increase the risk of reoffending." *Ortiz v. Breslin*, 142 S. Ct. 914, 916 (2022) (Sotomayor, S., concurring in denial of certiorari). Justice Sotomayor went on to acknowledge that a "large body of scholarship also cautions against residency restrictions as a means of reducing recidivism" but that "[d]espite the empirical evidence, legislatures and agencies are often not receptive to the plight of people convicted of sex offenses and their struggles in returning to their communities. Nevertheless, the Constitution protects all people, and it prohibits the deprivation of liberty based solely on speculation and fear." *Id*. at 916-917.

*Murphy* and *Barnes* applied the *Turner* standard to equal protection claims on motions for summary judgment. *Murphy*, 380 F. Supp. 3d at 752-754; *Barnes,* 529 F. Supp. 3d at 796 ("Plaintiffs' periods of post-sentence incarceration were not a consequence of their underlying offense but of their indigent or homeless status, a condition wholly beyond their control. Defendant's argument that the IDOC's requirements that sex offenders have a stable host site

(applied collectively through statute, regulation, and policy) is rationally related to protecting the public, especially children, misses the point. In the equal protection context, the relevant inquiry is whether the government's separate and discriminatory treatment of similarly situated individuals rationally relates to a legitimate penological interest.") On the present motion to dismiss, taking Plaintiffs' allegations as true, Defendant has not established that the separate treatment of indigent sex offenders with determinate MSRs serves a legitimate penological interest based on the evidence before the Court.

The remainder of the *Turner* factors also do not counsel for dismissal of Plaintiffs' equal protection claim at this stage. The second factor is whether alternative means of exercising the burdened constitutional right remain open. Plaintiffs argue that because the "alternative" to release on MSR to an approved host site is simply for the indigent sex offenders to "max out" their MSR term and then be released, there is no true alternative means. The third factor is the restriction's bearing on the guards, other inmates, and the allocation of prison resources – in this case, the allocation of prison resources. Defendant argues that permitting the release of indigent sex offenders that have completed their terms of incarceration but cannot obtain an approved host site due to their indigency would require a significant expense. Plaintiffs argue that IDOC can choose the "most economical means of fulfilling constitutional obligations," and that release of the indigent class members into homelessness or transitional housing could realizing savings for IDOC, not create additional expense. (Dkt. 22 at 29). The fourth and final *Turner* factor is whether alternatives exist suggesting that the prison exaggerates its concerns. The parties again dispute whether such alternatives exist: Defendant insists the cost to IDOC is prohibitive and the alternatives are not feasible; Plaintiffs respond that existing evidence is "workable and less expensive than continued incarceration" and that IDOC regularly releases non-sex offenders into

homelessness on MSR, such that release is "readily available." (Dkt. 17 at 18; Dkt. 22 at 29-30; *see also* Dkt. 20-1 at ¶7). Considering the Plaintiffs' allegations and the information currently before the Court, a deferential application of *Turner* does not require a finding that the policy decision (here, to continue to incarcerate indigent sex offenders for their MSR term if they cannot obtain host site approval) is "reasonably related to legitimate penological interests." *Compare with Williams v. Wisconsin*, 336 F.3d 576 (affirming motion to dismiss under Turner where "[t]here [was] no set of facts that could be imagined that would change this assessment of the legality of Wisconsin's ban on international travel for parolees."). The claim survives.

**CONCLUSION**

For the reasons given herein, Defendant's Motion to Dismiss (Dkt. 16) is denied.

Virginia M. Kendall
United States District Judge

Date: April 29, 2022